HAPGOOD PLOW COMPANY, Appellant, v. WABASH RAILWAY COMPANY, Respondent.

St. Louis Court of Appeals, March 12, 1895.

1. **Railroads:** LIABILITY OF GRATUITOUS BAILEE. A gratuitous bailee is liable only for gross negligence. And *held*, that the evidence in this cause failed to establish any such negligence on the part of the defendant railway company in the care of goods left in its custody by the consignor after the refusal of the consignee to receive the same.

2. ———: ———. It appeared in this case that the consignee of goods had refused to receive them from the railway carrier; that the consignor thereon told the station agent of the railway company to hold the goods until further notice, and that they were then stored in the warehouse of the company. *Quære,* whether the company was bound even as gratuitous bailee in the absence of further proof, either of a custom on its part to hold goods for the consignor under such circumstances, or of authority on the part of the station agent to agree to the bailment.

*Appeal from the Montgomery Circuit Court.*—HON. E. M. HUGHES, Judge.

AFFIRMED.

*J. D. Barnett* and *H. A. Loevy* for appellant.

*Geo. S. Grover* for respondent.

ROMBAUER, P. J.—The plaintiff sued the defendant for the value of certain plows shipped by the plaintiff over defendant's railroad to Wellsville, Missouri, in February, 1890, and destroyed by fire in October, 1890,

while in defendant's warehouse at the latter place. As one of the main issues in the case is whether the defendant held the plows at the date of their destruction as a bailee for hire, or as a voluntary bailee for the plaintiff's accommodation, we set out so much of the plaintiff's petition as bears upon that point, the same being as follows: "That said property was received. by defendant, was transported by it to Wellsville, Missouri, and was there placed and stored by defendant as a warehouseman in its warehouse or station in said Wellsville, where it remained until about the ――――― day of October, 1890, when it was, by the carelessness and negligence of defendant, its agents, servants and employees, destroyed by fire," etc.

The defendant's answer denied the facts stated in plaintiff's petition, and as an affirmative defense set up the following facts. The plows in question were shipped by plaintiff to Rippey & Windslow, the plaintiff's vendees. In June, 1890, the plaintiff brought suit against Rippey & Windslow for the purchase price of the plows, and on the twentieth day of February, 1891, recovered judgment against them for the sum of one dollar and costs. The plaintiff caused execution to be issued on, said judgment, which was paid and satisfied by Rippey & Windslow in April, 1891, and prior to the institution of this suit.

After an ineffectual motion to strike this special defense from the answer, the plaintiff filed its reply denying it. The cause was tried on these pleadings, and the court at the close of plaintiff's evidence instructed the jury that the plaintiff could not recover. The plaintiff thereupon took a nonsuit with leave, and, after a futile attempt to have the same vacated, brings the case here by appeal. The error assigned is the action of the court in taking the case from the jury.

The question, whether the recovery by plaintiff

against the vendees of the plows and the subsequent payment of the judgment by the vendees divested the plaintiff of all property rights in the plows, and of all rights of action for their destruction, has been argued extensively by the respondent in this court, but is foreign to this record. The affirmative defense in the answer was denied by reply, and, as the defendant offered no evidence to substantiate it, it remains for the purposes of this appeal unproved, and is, therefore, entirely out of the case. If the nonsuit can not be supported on the ground that the plaintiff has failed to show such negligence on part of defendant as would render it liable for the destruction of the goods, the judgment must be reversed.

The plaintiff's petition seeks to charge the defendant as a warehouseman, but does not state that it was a bailee for hire. While it states in general terms that the goods were destroyed by the defendant's carelessness and negligence, it fails to state any degree of negligence. The petition fails to state that the plaintiff either paid or offered to pay the defendant anything for the storage of the goods, and seeks a recovery for the entire value of the goods, without any deduction on account of storage charges. The petition, therefore, states nothing which is incompatible with a bailment without consideration.

The facts as developed by the evidence were as follows: The plaintiff shipped the plows to Rippey & Company, his vendees, in February, 1890. Upon the arrival of the plows, Rippey & Company refused to receive them. In a few weeks thereafter a representative of the plaintiff called upon the defendant's station agent at Wellsville, and said to him: "I am going to make Mr. Rippey take the plows, and you hold the plows until further notice from the Hapgood Plow Company, or from me as its representative." The

agent never heard anything further either from the plaintiff or its agents until the plows were destroyed by fire the following October, about six months after they were received.

The fire occurred in consequence of the explosion of a switch lamp, which was being filled in the interior of the warehouse by defendant's porter. There was evidence tending to show that the place where the goods were stored, was the defendant's usual freight house; that its floors were oily and greasy owing to oils and greasy freight being at times stored therein, and that one of the switch lamps, of which there were four, was leaky. The porter employed was a careful man, and had been in the employ of the defendant for years. He filled two lamps on the occasion in question, lit them and set them down, and, while he turned away to wipe his hands, one of the lamps exploded and the fire, owing to the material of the structure and presumably also to the fact that the floors were saturated with oil and grease, spread with such rapidity that the freight could not be saved. There was some inferential evidence that the lamp which exploded was the leaky lamp, and that that lamp was one of the two being filled. All the evidence concurred in showing that the defendant took as good care of the plaintiff's goods as it took of its own.

This being in substance all the evidence, we must conclude that the court did not err in taking the case from the jury. The evidence concedes that the goods were stored *exclusively for the plaintiff's accommodation,* and there is not even a suggestion either in the pleadings, or in the evidence, that they were stored for hire. In such a case the defendant is liable, if at all, for gross negligence only, of which there is no evidence in the record. *Graves' Adm'r v. Poage,* 17 Mo. 91; *Van Gilder v. Railroad,* 44 Iowa, 548; *Michigan Southern Railroad*

*v. Shurtz*, 7 Mich. 515; *Cohen v. Railroad*, 59 Mo. App. 66. Under the decision of *Chouteau & Valle v. Steamboat St. Anthony*, 16 Mo. 216, which case was four times before the supreme court, it is even doubtful whether the defendant was any bailee at all. No custom by the railroad company to hold goods under such circumstances for the accommodation of the vendor is shown in the case, and no authority on the part of the agent so to do is shown. Even if we concede that the continued holding of the goods by the defendant, after it was advised by the station agent of the facts, was some evidence that it undertook the bailment, we would not be warranted in assuming still further that it was a bailment for hire in face of the conceded facts that the goods remained there for six months without the plaintiff offering, or the defendant claiming, any charge for their storage.

All the judges concurring, the judgment is affirmed.