## CLARK *v*. ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY.

### Opinion delivered February 4, 1918.

1. RAILROADS—DAMAGE BY FIRE—LIABILITY OF RAILROAD.—Under Act 141, page 336, Acts of 1907, a railway company is liable absolutely in damages for injury to or the destruction of property, caused by such extraordinary hazards, as the operation of a locomotive engine, machinery, trains, cars, or other things, when used or operated upon the railroad, or by any of their servants or employees in the operation of such machinery upon the railroad tracks, or by the positive affirmative act of the servants or employees of railway companies in the operation of the railroad. The language of the act includes such acts as the burning off and clearing up of the right-of-way or roadbed, or such acts as the building of fires on the right-of-way, or in proximity thereto, while engaged in the work of repairing the railway track or roadbed for the operation of trains.

2. RAILROADS—DAMAGE BY FIRE ON RIGHT-OF-WAY—LIABILITY.—A railway company is not absolutely liable under Act 141, Acts of 1907, for the mere omission on the part of its servants or employees to extinguish or to prevent the spreading of fires on the right-of-way, which were started by others, or the origin of which is unknown.

3.  RAILROADS—LEASE OF RIGHT-OF-WAY.—A temporary use of the right-of-way by permission of the railway company, which does not interfere with the public use of the railway right-of-way, and such use to end at the will of the railroad company, is not inconsistent with the franchise of the railway company.

4.  LEASE—TERMINATION—RAILWAY RIGHT-OF-WAY.—A lease whereby a railway company granted the use of a portion of its right-of-way, *held*, not abandoned, under the testimony.

5.  RAILROADS—DAMAGE BY FIRE FROM RIGHT-OF-WAY—PROOF.—In an action for damages by a fire communicated from defendant's right-of-way, testimony showing the existence of a fire near by off the right-of-way, and that a wind was blowing in the direction of appellant's property, is admissible. The railway is entitled to have all the testimony that would tend to shed light upon the probable origin of the fire go before the jury, whose sole province it was, under the circumstances, to determine that issue.

Appeal from Clark Circuit Court; *George R. Haynie,* Judge; affirmed.

*John H. Crawford* and *Dwight H. Crawford,* for appellant.

1.  The railway company and receiver were liable, without proof of negligence, for damages by fire, whether it originated from the operation of trains, or was caused by servants in the line of their employment whether from acts of commission or omission. Acts 1907, p. 336; 120 Ark. 595, 600.

2.  The court erred in not giving appellants' first instruction as requested and in inserting the word "negligently." 115 N. Y. 579, 5 L. R. A. 591; 112 Ark. 298, 300.

3.  The court erred in refusing to give appellants' second instruction and in giving appellee's fourth and fifth cases *supra.*

4.  It was error to permit Armstrong to testify about forest fires, etc., without connecting such fires with the origin of the fire destroying the property.

5.  It was error to give the sixth instruction. It invited speculation as to whether or not some other cause for the fire existed, where there was no competent testi-

mony that furnished any other probable origin of the fire.

6. It was error to give instruction 8-A. Appellant can not be guilty of contributory negligence unless guilty of gross fraud.

7. Under Acts 1907, a plaintiff can not be guilty of contributory negligence, short of an act so grossly negligent as to amount to fraud. 121 Ark. 585-9; 105 *Id.* 374; 104 *Id.* 80-87-88; 112 *Id.* 298.

8. It was error to admit the lease in evidence. It had been abandoned and was not in force. The consolidated railway company only had a right-of-way of 99 feet and not 200 feet. 113 U. S. 465; 67 Ark. 498.

9. A railroad company can not lease a right-of-way for non-railroad purposes. 65 Wash. 100; 36 L. R. A. (N. S.) 522; 78 Tex. 71, 9 L. R. A. 295; 33 S. W. 139; 22 Kans. 285; 31 Am. Rep. 190; Mills on Em. Dom, § 57.

*E. B. Kinsworthy* and *R. E. Wiley,* for appellees.

1. There was no proof of negligence. The fire was started by sparks from a smouldering fire not set by the railroad or its servants, and the appellees are not liable. Acts 1907; 336; 97 Ark. 287; 119 *Id.* 143. There is no error in the instructions given.

2. There was no error in No. 8-A, nor in No. 6.

3. Armstrong's testimony was competent. 121 Ark. 585.

4. There was no error in admitting the lease. It had not been abandoned, nor was it invalid. The lease was for a railroad purpose. 257 Ill. 491; 44 L. R. A. (N. S.) 1127; 77 Vt. 334; 70 L. R. A. 930; 20 *Id.* 647; 23 *Id.* 356; 17 Ill. App. 582; 36 L. R. A. (N. S.) 522.

5. If the lease was invalid appellant was a trespasser. 120 Ark. 595. The lease exempts defendants from liability. 120 Ark. 595; 44 L. R. A. (N. S.) 1127, and notes; 257 Ill. 491; 70 L. R. A. 930; 170 S. W. 591.

But if the lease was incompetent testimony it was not prejudicial; it is plain in its terms and confines the

absolute protection against liability to the property of the right-of-way.

The testimony was conflicting and the verdict, on proper instructions, is conclusive.

WOOD, J. Appellant instituted this suit against the appellees to recover for damages to his property, alleging, among other things, "that on September 21, 1916, the servants and employees of the defendants carelessly and negligently kindled a fire on the right-of-way of said railway company, and from said fire so carelessly and negligently kindled, the same was negligently allowed to spread and burn and totally consume plaintiff's said property; that if said fire did not spread from the right-of-way as above alleged, it was carelessly and negligently allowed to be kindled from sparks from one of defendant's trains operated on said railway."

The defendants denied the allegation of the complaint as to negligence and set up affirmatively the defense of contributory negligence, and also the provisions of a lease contract which the appellees alleged was a bar to appellant's cause of action.

I. There was testimony from which the jury might have found that appellant's mill was destroyed by fire which originated either from appellees' locomotive, or by fire which originated from some unknown cause, and was discovered by the section foreman on appellees' right-of-way near appellant's mill some three or four days before the mill was burned.

It could serve no useful purpose to set out in detail the testimony bearing upon the issue as to the origin of the fire, and also upon the issue as to whether or not appellees' servants were negligent in not putting out or controlling the fire after discovering the same, and also upon the issue as to whether or not the fire was caused by appellant's negligence. These were issues of fact for the jury.

The principal question to be determined on this appeal is whether or not, under the Act of April 2, 1907,

the appellees were liable to appellant in damages for
the loss of his mill caused by fire which was known by
the employees of appellees to exist on the right-of-way
of the railway company some three or four days before
the mill was destroyed, without other proof of negligence.
The act, in substance, makes railway companies liable
for the destruction of or injury to any property "which
may be caused by fire or result from any locomotive, en-
gine, machinery, train, car or other thing used upon said
railroad, or in the operation thereof, or which may re-
sult from, or be caused by any employeee, agent or serv-
ant of such corporation, company or person upon or
in the operation of such railroad."    And the owner of
any such property may recover all such damages, and
upon the trial of any suit for such damages "it shall not
be lawful for the defendant in such suit or action to plead
or prove as a defense thereto that the fire which caused
such injury was not the result of negligence or careless-
ness upon the part of such defendant, its employees,
agents or servants; but in all such actions, it shall only
be necessary for the owner of such property so injured
to prove that the fire which caused or resulted in the
injury originated or was caused by the operation of such
railroad, or resulted from the acts of the employees,
agents or servants of such defendant."    Act 141, Acts of
1907, p. 336.

(1)    While the language of the act is somewhat in-
volved and ambiguous, yet when construed as a whole,
it shows that it was the intention of the Legislature to
make the railway company liable absolutely in damages
for injury to or destruction of property caused by such
extraordinary hazards as the operation of a locomotive
engine, machinery, trains, cars, or other things, when
used or operated upon the railroad, or by any of their
servants or employees in the operation of such machin-
ery upon the railroad tracks, or by the positive affirma-
tive act of the servants or employees of railway com-
panies in the operation of the railroad. The language is

sufficiently broad to include such acts as the burning off and clearing up of the right-of-way or roadbed, or such acts as the building of fires on the right-of-way or in proximity thereto while engaged in the work of repairing the railway track or roadbed for the operation of trains.

Kansas has a statute to the effect that a fire caused by the operation of a railroad raises a *prima facie* presumption of negligence on the part of the railroad company. The Supreme Court of Kansas, in construing this statute, among other things, says:

"The statute prescribes a rule in actions for damages by fires caused by the operation of a railroad, and it is contended that caring for the right-of-way is not within the terms 'operating a railroad.' The claim is not tenable. The statute applies to all cases where the fire results from the operation of a railroad. It is not even confined to fire escaping from locomotives, but applies to all cases where the damage was caused by fire arising from any step in the operation of the road. The roadway and track of the company are as essential to the operation of the railroad as the locomotives or the other equipment." *Mo. Pac. Ry. Co.* v. *Merrill*, 40 Kan. 404, 407, 19 Pac. 793, 794.

And in *Mo. Pac. Ry. Co.* v. *Cady*, 24 Pac. 1088, the court says: "The burning of dry grass, weeds and other combustible material which annually accumulates on the right-of-way, is caring for the roadway and track."

(2) This is the utmost extent of liability which the Legislature intended to impose in the absence of negligence. There is no language in the act to justify the construction that it was the intention of the Legislature to make railway companies absolutely liable in damages for fires that were set out or started by others than the servants or employees of railway companies, or fires that were not shown to have been caused by the character of machinery mentioned or by some positive or affirmative act of the employees in originating the fire which caused the loss of or damage to property. In other

words, for the mere omission on the part of the servants and employees of railway companies to extinguish or to prevent the spreading of fires on their right-of-way which were started by others, or the origin of which is unknown, does not render railway companies absolutely liable in damages for the loss caused by such fires. For the destruction of, or injury to, property caused by such omissions on the part of the servants and employees of railway companies, such companies would be liable provided such omissions constituted negligence upon the part of such employees, but in that case the companies would be liable, not under the statute, but under their common law liability for injury and the consequent damage caused by their negligence.

In *Kansas City Sou. Ry. Co.* v. *Thomas,* 97 Ark. 287, a passenger placed his trunk in a railway station intending to take a train the next morning and the trunk was burned during the night. The origin of the fire was not shown. It was not proved that the employees of the railway company set fire to the station. In that case it was the contention of the appellee, Thomas, that the appellant company was liable absolutely under the Act of 1907, regardless of negligence. We held that the liability of the railway company, under the facts of that case, was not that of an insurer, but that its duty was that of a warehouseman, and its liability depended upon whether or not it had exercised ordinary care to preserve the property that had been entrusted to it. The exact question here presented was not before the court in that case, but the opinion is authority for holding that the act under review does not contemplate an absolute liability upon the part of railway companies for injuries by fires that are not caused in connection with the operation of their trains, and that are not shown to have been caused by some positive act of the servants or employees.

In *Kansas City So. Ry. Co.* v. *Wilson,* 119 Ark. 143, the damages for which appellee sued were caused by a fire shown to have been set out by appellant's section men

while burning off its right-of-way. In that case we said: "The liability of the defendant to the plaintiff for the destruction by fire of its pasture and fence depends, first, upon the proof whether it resulted from its act, and, second, whether the fire resulted from the negligence of the defendant or its servants in burning off its right-of-way. What would constitute such negligence or want of care and prudence as would render the railroad company liable for the destruction by fire from its act in burning off its right-of-way depends upon the circumstances as they existed at the time. * * * It was the duty of the foreman to prevent the fire from escaping from the right-of-way of the railroad company. There was no other fire in the neighborhood and the jury might have inferred that the section foreman, after burning off the right-of-way, went off and negligently left fire burning there."

So, it will be observed that that case was disposed of on the theory that the evidence was sufficient to show that the employees of the appellant were negligent in going off and leaving a fire which they had set out to burn off the appellant's right-of-way. The question as to whether or not the appellant would have been absolutely liable under the facts of that case was not presented, and therefore we do not regard that case as decisive of the issue now before the court and as being in favor of the contention of the appellees. Nevertheless, in our opinion, the language of the statute compels the interpretation which we now give it.

We find no error, therefore, in the ruling of the court in refusing appellant's prayer for instructions which told the jury, in effect, that if the fire was set out by the appellees' locomotive engines, or in the operation thereof, or if there was a fire on the right-of-way which was negligently permitted by the appellees' servants and employees to spread and burn the appellant's property, that the appellees would be liable for the damages caused thereby.

II.    There was no error in the giving of the appellees' prayer for instruction No. 8-A.*

The defense of contributory negligence was set up in the answer, and there was evidence to warrant the court in submitting this issue to the jury, which was correctly done in prayer No. 8-A.

III.    The court, over the objection of the appellant, permitted the appellees to introduce a lease contract with the appellant, by which the railway company agreed to allow the appellant to build a portion of his mill plant upon the appellees' right-of-way, and in consideration of the reduced rental which appellant was required to pay to the railway company appellant agreed to "waive, release, relinquish and abandon any and all claims or rights of action which he might otherwise have by reason of loss or damage to buildings or other property of the leased premises by fire, arising from the operation of the railway over and upon or near said premises, 'whether said fires be caused by sparks from locomotives or said lessor or in any other manner while this lease continues in force.' The contract contained a provision that 'the term shall commence on the day first above written and shall continue until thirty days after either said lessor, its successors or assigns, or said lessee shall serve written notice upon the other party of the desire to terminate this lease.' "

There was a further provision that the "lessee further agrees upon the termination of this lease to remove from the leased premises all buildings and other improvements erected by lessee thereon and to restore the sur-

---

Instruction No. 8-A asked for by defendants.

*"If you believe from the testimony that the plaintiff had an agent to look after the mill and that the agent knew of the fire burning near the mill and knew or by the use of ordinary care could have known that the same exposed the mill to destruction by fire and that he failed to use ordinary care to prevent the same, then your verdict should be for the defendants, notwithstanding you should find that the fire caught from a fire negligently or carelessly left by defendants' employees on the right-of-way, if you believe there was any such fire negligently left on the right-of-way."    (Reporter.)

face of the ground to the same condition as before said buildings were erected and the improvements made.''

The undisputed evidence justifies the inference that this lease, on account of the low rental, was entered into on the part of the railway company in order to promote its business as a common carrier. There is no testimony to show that the use which the lessee made of the property could in any manner interfere with the duties which the carrier owed the public to transport freight and passengers.

''A railroad corporation holds its station, grounds, railroad tracks and right-of-way for the public use for which it is incorporated, yet as its private property; and to be occupied by itself or by others in the manner that it may consider best fitted to promote, or not interfere with, the public use. It may in its discretion permit them to be occupied by others with structures convenient for receiving and delivering freight upon its road, so long as a free and safe passage is left for the carriage of freight and passengers.'' *Osgood* v. *Central Vermont R. Co.*, 77 Vt. 334, 70 L. R. A. 930.

(3) It is held by the authorities generally that a temporary use of the right-of-way by permission of a railroad company, not interfering with the public use of the right-of-way of a railroad, and to end at the will of the railroad company, is not inconsistent with the franchise of the public carrier. See *Griswold* v. *Ill. Cent. R. Co.*, 90 Iowa 265, 24 L. R. A. 647; *Grand Trunk Ry. Co.* v. *Richardson*, 91 U. S. 454.

(4) While there was testimony to the effect that the owner of the mill plant had abandoned, for some years, the manufacture of lumber, and also to the effect that the railway company had severed the switch connections with the mill plant, this testimony was not sufficient to show that the parties to the contract had abandoned the same. The contract itself prescribed the terms upon which the parties to it might terminate it; that is, by written notice served upon the opposite party thirty days before the termination of the contract. There is no evidence to show

that the contract was terminated in this manner. As the lease provided that when the same was terminated the lessee was to remove from the leased premises all the buildings and other improvements that had been erected thereon by him, and since these improvements had not been removed, the presumption would be that the lease contract had not been terminated or abandoned. The court was correct in treating the same as in existence, and in permitting the same to be read in evidence.

(5) IV. Witness Armstrong testified, over the objection of appellant, that he saw forest fires along through the woods about half a mile from where appellant's mill was located, and on the same side of the track that the switch and mill were on; that the woods were unbroken from where he saw the fires to the mill; that he passed there about 11:30 o'clock a. m. before the fire occurred. The fire occurred something after one o'clock in the afternoon. The fire was running along, burning the leaves and grass and stuff on the ground. Lots of tree tops were lying around there and the fires were burning up into them. There was heavy smoke all along through that part of the country, between Britts and the Little Missouri River. The river was south, towards Texarkana, from Britts.

Other witnesses testified that there was a high wind blowing from the direction where the fire was seen in the woods towards the mill plant. It was in the fall of the year and very dry.

This testimony was competent. It was a question for the jury to determine, from this evidence, in connection with the other evidence, as to the origin of the fire that caused the destruction of appellant's property. It cannot be said that this testimony was too remote to throw any light upon the origin of the fire. It cannot be said that it was physically impossible for the fire which Armstrong discovered in the woods to have been transmitted by the high winds through the combustible material

intervening to the mill plant of appellant. The appellees were entitled to have all the testimony that would tend to shed light upon the probable origin of the fire go before the jury, whose sole province it was, under the circumstances to determine that issue.

It follows, therefore, that the court did not err in granting the appellees' prayer for instruction No. 6,* which was based upon the above testimony.

The record presents no reversible error and the judgment must therefore be affirmed.

---

*The court instructs you that if the evidence, in this case, fails to show how the fire started, or if from the evidence you believe that it is equally as probable that the fire started from some other cause as that it started from sparks or cinders from defendant's locomotives or from a fire on the right-of-way which was negligently permitted to spread by defendant's employees, then your verdict should be for the defendants. (Reporter.)