# BLACKMORE v. MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

### Division One, May 14, 1901.

1. **Fire From Locomotive:** STATUTE: CONSTITUTIONALITY. The statute holding a railroad company liable for the destruction or injury of property by fire communicated by sparks from locomotives has so often been held to be constitutional that in this case the court declines to consider the question.

2. **Practice:** BLENDING CAUSES OF ACTION: INSTRUCTIONS: SUBMITTING PLEADINGS TO JURY. It is error for the jury to have the pleadings with them in their jury room, or to give an instruction which assumes that the jury know what the issues are. If there is a mingling in the petition of a common-law action for negligence in the destruction of plaintiff's property, and a statutory liability for injury done to the property by fire communicated from defendant's locomotive, the instructions should clearly make it known to the jury on which cause of action plaintiff desires to recover. And this is the rule, whether there has been any demurrer or motion to elect or not.

3. **Baggage Destroyed by Fire:** STATUTE NOT APPLICABLE. The statute (section 1111, Revised Statutes 1899) holding a railroad company liable for the destruction or injury of property by fire communicated by sparks from its locomotive, does not apply to goods in the possession of the company for transportation or held by it at the end of transit for delivery to the owner. The statute was intended to apply only where the loser of the property has no other remedy.

Transferred from Kansas City Court of Appeals.

CIRCUIT COURT JUDGMENT REVERSED AND CAUSE REMANDED.

*Elijah Robinson* for appellant.

(1) The trial court committed error in giving plaintiff's instruction 1, and in refusing defendant's instruction 2; and this is true, whether the case be treated as a common-law action for negligence, or as an action against defendant as a carrier, or as an action under the provisions of section 2615, Revised Statutes 1889. (a) Plaintiff's petition states a common-law action for negligence specifying wherein the negligence consisted; but on that theory of the case the court committed error in that the instructions authorize a recovery without any finding of negligence on the part of the defendant. (b) The defendant could not be held liable as a carrier, because its liability as a carrier terminated on the expiration of a reasonable time to remove the trunks in question after their arrival at their destination. Fetter on Carriers of Passengers, sec. 613; Dinney v. Railroad, 49 N. Y. 546; Mortland v. Railroad, 81 Hun 473; Railroad v. Boyce, 73 Ill. 510; Railroad v. Addizoat, 17 Ill. App. 632; Railroad v. Mahon, 8 Bush. 184; Moat v. Railroad, 27 Iowa 22. (2) Said section 2615 is unconstitutional. It denies defendant the equal protection of the laws, and is therefore in conflict with section 1 of article 14 of the amendments of the Constitution of the United States. Santa Clara County v. Railroad, 118 U. S. 394; Slaughter House Cases, 16 Wall. 336; Railroad v. Moss. 60 Miss. 641; Pearson v. Portland, 69 Me. 269; State v. Hays, 81 Mo. 586. It is also in conflict with section 30 of article 2 of the Constitution of this State, because it takes defendant's property without due process of law. Miller v. Martin, 16 Mo. 508; Kahle v. Hoben, 30 Mo. App. 476; Catron v. Nichols, 81 Mo. 82; Small v. Railroad, 51 Iowa 340; Railroad v. Lackey, 78 Ill. 57; Zeigler v. Railroad, 58 Ala. 594; Wally's Heirs, 2 Yerg. 554. (3) Section 2615 is not applicable to this case. It is perfectly apparent from the language of the statute that said section was intended to apply to property located upon or along the route of the railroad, and

not property in transit or left temporarily at the depot after having been transported. Moreover, it has never been held that a statute of this kind was intended to cover property in the possession of a railroad company under contract of carriage. Bassett v. Railroad, 145 Mass. 129; Fenner v. Railroad, 44 N. Y. 505.

*Scarritt, Griffith & Jones* for respondent.

(1) No error was committed by the court in giving plaintiff's instruction number one and refusing defendant's instruction number two. Plaintiff dismissed as to the first and third counts of his petition and stood on the second, which is based on section 2615, Revised Statutes 1889, being section 1111, Revised Statutes 1899. Proof or finding of negligence on the part of defendant was not necessary. Mathews v. Railroad, 121 Mo. 330; Walker Bros. v. Railroad, 68 Mo. App. 471; Campbell v. Railroad, 121 Mo. 340. (2) Plaintiff's petition states a good cause of action under the statute above referred to. The fact that the petition unnecessarily charges negligence does not prevent recovery under the statute without proof of negligence. The allegation of negligence is surplusage when all the facts essential to ground a recovery under the statute are stated. Campbell v. Railroad, 121 Mo. 348; Radcliffe v. Railroad, 90 Mo. 131; Morrow v. Surber, 97 Mo. 155; Walker Bros. v. Railroad, 68 Mo. App. 474; Field v. Railroad, 80 Mo. App. 603. (3) Defendant's instruction number 5 was properly refused. The case being grounded on the statute and tried and submitted on that theory, plaintiff's negligence would not defeat his recovery. Mathews v. Railroad, 121 Mo. 336; Walker Bros. v. Railroad, 68 Mo. App. 482. (4) Section 2615, Revised Statutes 1889, on which plaintiff relies, is applicable to this case. Mathews v. Railroad, 121 Mo. 298; Campbell v. Railroad, 121

Mo. 340; Adams v. Railroad, 138 Mo. 242; Ins. Co. v. Railroad, 149 Mo. 165; Walker Bros. v. Railroad, supra; Field v. Railroad, supra.

VALLIANT, J.—This suit is to recover the value of four trunks and their contents, destroyed in a fire that consumed a depot of defendant, in which the trunks were deposited.

There are three counts in the petition.

The first is an action at common-law against defendant as a common carrier upon the ground that plaintiff was a passenger and the trunks were his baggage intrusted to the railroad company to carry and deliver to him at the end of his journey; that at the end of the route the trunks were not delivered but instead were put into defendant's depot where they were destroyed by fire, through the negligence of defendant's servants.

The second count (which is the one on which the verdict was rendered) sets out that plaintiff and his wife and children were passengers on defendant's train from Lee's Summit to Greenwood, having paid their fare and delivered their trunks in question, containing their wearing apparel and some other things, to the defendant's agent who checked them to Greenwood; "that shortly after the arrival of said trunks at Greenwood, Missouri, the same with their contents were stored in the depot of defendant by its servants and employees at said place; that defendant was careless and negligent, in that said depot was in an unsafe, insufficient and highly inflammable building, to which fire was communicated by sparks which were negligently allowed to escape from an engine in use upon the railroad of defendant, and owned and operated by defendant; that as a result of the carelessness and negligence of defendant, aforesaid, said trunks and their contents were completely destroyed," etc.

The third count was like the second with the additional

averments that the locomotive was defective and was carelessly handled and that by reason of such defect and carelessness, sparks escaped and set fire to the depot, and that after the depot was afire the servants of defendant were negligent in not removing the trunks from the burning building, by means of which negligence the trunks were destroyed.

The answer was a general denial. The case was tried by the court and jury.

The testimony on the part of plaintiff tended to show that he was engaged in some kind of art show or illustrated lecture business, in which he was assisted by his wife and two children; that in September, 1896, he with his wife and children took passage on a train of defendant for which he paid fare from Lee's Summit to Greenwood, carrying as their baggage the four trunks in question; that upon arriving at Greenwood about 10 o'clock in the forenoon and intending to leave the next day, plaintiff found it more convenient to leave his trunks at the depot than to take them to the hotel, and did so, and they were accordingly placed in the depot. Between three and four o'clock the next morning the depot was consumed by fire and the trunks were destroyed. There was also testimony as to the contents of the trunks and their value. Plaintiff's testimony also tended to show that the depot was an old building of pine, the shingles dry and curled, and leaves lodged in the crevices in the roof; that it burned rapidly; that while the building was burning defendant's agent and servant was seen moving out the ticket box and certain other property of the defendant, but did not move out the plaintiff's trunks. As to the origin of the fire, the plaintiff's testimony tended to show that there had been no fire or lights in the depot that night, that a train of defendant's passed there shortly after three o'clock in the morning, and about ten or fifteen minutes before the first witness who saw the fire in the roof of the depot discovered it. When this

witness first saw it it was, as she said, about the size of her hand; she made the alarm and aroused the agent, who was asleep in the building; by the time the agent was aroused the fire had increased in size to about four feet square.

At the close of plaintiff's evidence the defendant asked and the court refused an instruction for a nonsuit, and defendant excepted.

There was testimony on the part of the defendant tending to contradict the plaintiff's theory of a defective depot, and of negligence, and tending also to contradict the inference that a spark from the engine caused the fire.

At the request of the plaintiff the court instructed the jury in effect that if they believed from the evidence that plaintiff's trunks were in the depot and destroyed by fire and that the fire was started by sparks from the engine, they should find for the plaintiff, on the second count of the petition, for value of the trunks and contents.

At the request of defendant the court gave an instruction in relation to the burden of proof of the alleged fact of the fire having been started by sparks from the engine and how they were to weigh the evidence, etc.

The defendant at the close of all the evidence again asked an instruction to the effect that plaintiff was not entitled to recover, and also instructions to the effect that defendant was not liable unless the proof showed that plaintiff's loss was the result of defendant's negligence in one of the particulars mentioned, and that defendant was not liable because its agent rescued its own property, books, etc., from the fire in preference to plaintiff's trunks, if after doing so he did not have time to rescue plaintiff's property, and also that plaintiff could not recover if he was guilty of negligence in leaving his trunks at the depot over night instead of taking them to the hotel. All of which the court refused and defendant excepted.

After the case had been argued and submitted to the jury under the two instructions above mentioned, as having been given, the jury retired for deliberation, and not having reached a verdict at the close of the day's session they were suffered to separate for the night and reassembled in court the next day, when the court gave them the following additional instruction: "At the request of the plaintiff the court withdraws from the consideration of the jury the first and third counts of the petition; and, therefore, if you find for the plaintiff you will find for him on the second count of the petition." Defendant duly excepted to the instructions given.

There was a verdict for plaintiff for $1,000 and judgment accordingly, motions for new trial and in arrest which were overruled and appeal taken to the Kansas City Court of Appeals. Among the grounds for a new trial is assigned that section 2615, Revised Statutes 1889, under which the case was given to the jury, is in violation of the Constitution of this State and of the United States. Upon that ground the Kansas City Court of Appeals transferred the cause to this court.

I. The statute in question, now section 1111, Revised Statutes 1899, holding a railroad company liable for the destruction or injury of property by fire communicated by sparks from its locomotives, has so often been before this court and we have so often held that it is in no respect in conflict with any of the provisions of our State Constitution, that we have nothing more to say on the subject. [Mathews v. Railroad, 121 Mo. 298; Campbell v. Railroad, Id. 340; Adams v. Railroad, 138 Mo. 242; Lumbermen's Mutual Ins. Co. v. Railroad, 149 Mo. 165.] And the Supreme Court of the United States has plainly said that it in no respect violates any provision of the Federal Constitution. [Railroad Co. v. Mathews, 165 U. S. 1.]

II. Appellant in its brief questions whether the plain-

tiff in drawing his petition had in mind to state a cause of action founded on the statute. The plaintiff may have had that statute in mind and a desire to avail himself of its provisions, but his petition was so shaped that if he should fail in tracing the origin of the fire to a spark from the locomotive he would still have the common-law action of negligence. In this respect the second count in his petition, on which the verdict was rendered, was something more than a mere count on the statute with an additional allegation that might be rejected as surplusage, that the spark was suffered to escape from the engine through negligence. The allegation in that count as to the origin of the fire might be rejected and still leave a cause of action stated at common-law.

It may be doubted if our code of civil procedure authorizes the joining of a common-law count in tort with a count under the statute now in question. In our decisions construing this statute we have treated it as creating the relation of insurer and insured under an enforced implied contract of insurance, and if we are to class this under the head of actions *ex contractu,* then it could not be united with an action *ex delicto.* But, however that may be, the plaintiff had no right to state the two causes of action in one count as he has done in each of the second and third counts. But there was no demurrer or motion to elect interposed, and the trial progressed with the two causes blended in one count and evidence applicable to both aspects of the case was received. It was not until the court came to instruct the jury that the issue to be tried was defined. The first instruction given for the plaintiff ignored the question of negligence and directed a verdict for the plaintiff if his goods were destroyed by a fire started by a spark from the engine. But the jury were left without instruction in relation to the evidence on the question of negligence and were free to apply or disregard it, as they might see fit. The error

of leaving the jury in that dilemma was discovered after they had retired for deliberation, and before they were returned the next morning to the jury room the court gave them this additional instruction:

"At the request of the plaintiff the court withdraws from the consideration of the jury the first and third counts of the petition; and, therefore, if you find for the plaintiff you will find for him on the second count of the petition."

This instruction assumed that the jury knew what the issues were under the different counts. The jury did not have, or should not have had, the pleadings in their jury room; they should have learned from the instructions what the issues were that they were to try. Pleadings, although read at the trial in the hearing of the jury, are addressed to the court; they are in technical language, understood by the court, but often unintelligible to the jury. There may be some variation in the practice of different jurisdictions, of giving the pleadings to the jury, but in this State it is not approved. In 11 Ency. Pl. and Prac., 154, it is said: "Although there are some decisions which hold that it is not error to read the pleadings to the jury, or to refer them to the jury in order that they may determine what are the issues in the case, and other decisions holding that although not erroneous such practice is not commendable, the clear weight of authority is to the effect that it is the province and duty of the court to state specifically to the jury what issues are raised by the pleadings, and that it is erroneous to refer the jury to the pleadings to ascertain for themselves what the issues were; that the construction of the pleadings and the issues raised thereby are questions for the court alone to determine, and not for the jury." That has always been the doctrine of this court. [Butcher v. Death, 15 Mo. 271; Dassler v. Wisley, 32 Mo. 498; Britton v. St. Louis, 120 Mo. 437; Sherwood v. Railroad, 132 Mo. 339.]

It was error to have given the second instruction in that form..

III.   But the most important question in this case remains to be considered.   We have in the former cases above referred to decided that the statute in question is constitutional, that it covers all kinds of property, real, personal, useful, ornamental, that it covers property not only adjacent to the railroad but distant from it, but we have not yet decided whether or not it covers property in custody of the railroad company for transportation or in the course of transportation, or at the end of the journey held for delivery to the owner.

The ground upon which this statute has been upheld and justified is that the railroad company, being licensed to run a dangerous machine through the country, carrying fire and emitting sparks, is liable, even while exercising the utmost care, to set out a destructive fire, against loss from which the owner of property destroyed would have no remedy.   In all the cases that have heretofore come before us, the railroad company had no control of the property and owed it no duty, except to use ordinary care not to injure it by its own acts.    But when goods or baggage are delivered to a railroad company for transportation, a contractual relation arises between the shipper or passenger as the case may be, and the carrier, whereby the carrier becomes the insurer of the goods or baggage, and if it is lost or destroyed the owner has a remedy.    And when the goods have reached the end of the journey and a reasonable time has been afforded the owner to take them away, but he neglects to do so, the railroad company, though no longer an insurer, is still under an obligation arising out of its contract for transportation to take reasonable care as a warehouseman to preserve the goods from loss.   [28 Am. and Eng. Ency. of Law (1 Ed.), 642, 661, 662; Standard Milling Co. v. Transit Co., 122 Mo. 258.]

Massachusetts is the parent of the statute we are now dis-

cussing. It was adopted in 1840 in that State, and has been copied in several other States. In our former deliberations upon it we have been aided by decisions of the Massachusetts court. The precise question we now have, was decided by that court in Basset v. Railroad, 145 Mass. 129. The court said: "The statute invoked is remedial, and has been liberally construed in favor of those for whose benefit it was enacted. The decisions indicate that it applies to property of every kind, and in any place where fire may be communicated by a locomotive engine......But it has never been held that it includes within its provisions articles placed in the possession of a railroad corporation by their owner under a contract which fully covers the rights and liabilities of both parties regarding it. ......Nor is there any difference in this regard between express and implied contracts......The defendant was bound to carry the goods, and was an insurer of them until the transit ended, and was then liable as a warehouseman for any want of ordinary care during such reasonable time as they should remain in its custody awaiting the call of the consignee. This was the extent of its liability......The goods having been destroyed while in the possession of the defendant under this contract, the plaintiff must seek his remedy under it, and the statute referred to does not apply." The Supreme Court of Oklahoma, under a like statute, has ruled as did the Massachusetts court. [Walker v. Eikleberry, 13 Am. and Eng. Railroad cases (N. S.), 253.]

When we reflect upon the reason for the enactment, the evil that it was intended to remedy, we see that it has no application to a case of this kind. If a railroad company, after it has used every device within reason, and all care that human experience can teach, can not prevent sparks escaping and resulting in a destructive fire, the person whose property is

burned is, but for this statute, without remedy. The statute was enacted to remedy that evil. But the law governing the rights and liabilities of a passenger with baggage and a common carrier, has been long established and adjusted upon principles which experience has taught were wise and just, and the statute in this case was not designed to add anything to the law on that subject.

We therefore hold that the statute in question does not apply to goods in the possession of the railroad company for transportation or held by it at the end of the transit for delivery to the owner.

As this conclusion disposes of the whole case, there is no necessity for considering other points discussed in the briefs.

The judgment of the circuit court is reversed and the cause remanded. All concur except *Marshall, J.,* absent.